**Daniel R. LEAVELL, et al., Appellants,**

**v.**

**Gibson KARNES, Appellee.**

**Civ. No. 90–4125–JLF.**

United States District Court,
S.D. Illinois,
Benton Division.

Oct. 31, 1990.

Darrell W. Dunham, William F. Meehan, Carbondale, Ill., for appellants.

Terry Sharp, Mt. Vernon, Ill., for appellee.

## OPINION

FOREMAN, Chief Judge:

Before the Court are two appeals from an April 26, 1990, order of the bankruptcy court. At issue are those portions of the order (1) disallowing Eva Lovene Leavell's claim for $225,978.64 on the ground that it was untimely; (2) denying Daniel Russell Leavell's motion to reconsider his objection to an application for attorney's fees; and (3) allowing the trustee, over Daniel Leavell's objection, to abandon certain oil-producing properties.

The appeals filed by Mr. and Mrs. Leavell were consolidated by a Court order entered on June 6, 1990. This Court has jurisdiction to hear these appeals under 28 U.S.C. § 158(a).

## I. Facts

On July 17, 1985, appellant Daniel Leavell filed a Chapter 11 bankruptcy petition, which was converted to Chapter 7 on December 12, 1985. The appellee, Gibson D. Karnes, was appointed trustee and the law office of Terry Sharp, P.C., was appointed to act as the trustee's attorney. This appeal is based upon the bankruptcy court's ruling on April 10, 1990, with respect to three separate matters then pending before that court.

The first issue involves appellant Eva Leavell's efforts to file a claim against the bankruptcy estate after the bar date for filing such claims. On March 26, 1990, the White County Bank initiated a mortgage foreclosure action in state court against both Mr. and Mrs. Leavell. She states that she signed the mortgage as an accommodation to Mr. Leavell and is therefore entitled to reimbursement. She filed a Motion for Leave to File a Proof of Claim with the bankruptcy court on April 9, 1990. The motion was granted, but the filed claim was disallowed (Document Nos. 309 and 315).

The bankruptcy court did not give a specific reason for disallowing the claim, but did make reference to the fact that the deadline for filing claims had long passed. There is no dispute that Mrs. Leavell's claim was tardily filed. The section 341 meeting of the creditors was held on January 17, 1986, which means that the bar date for filing proof of claims was on April 17, 1986—nearly four years before Mrs. Leavell attempted to file her claim.

The second issue involves the debtor's objection to attorney's fees sought by the trustee's attorney. Attorney Sharp's office filed an application for compensation and reimbursement on January 18, 1989, seeking reimbursement for $34,804.61 for services and costs from January 22, 1986, to January 13, 1989 (Document No. 285). The record reflects that the Clerk of the Bankruptcy Court mailed a copy of the Notice of Application for Compensation and Reimbursement to creditors and other parties in interest on January 18, 1989 (Document No. 286). No written objections to the application were filed prior to the bar date stated within the notice. However, on March 19, 1990, Mr. Leavell filed a Motion to Permit Filing of Objection (Document No. 304), seeking leave to file an objection to the application. The motion was denied (Document No. 305) on the ground that both the debtor and his attorney had been sent notice of the application and had not

filed any objections within the stated time period.

Mr. Leavell subsequently filed a Motion to Reconsider Order Denying Motion for Leave to File Objection to Attorney Fees (Document No. 306) and included an affidavit in which he stated that he never received a copy of the notice regarding the application for attorney's fees. That motion was denied orally and in a subsequent written order (Document Nos. 309 and 315).

The final issue involves the trustee's abandonment of certain oil-producing property in the estate. On November 7, 1988, appellant Daniel Leavell filed a Motion to Remove the Chapter 7 Trustee (Document No. 267), alleging, *inter alia*, that the oil-producing properties in the estate were being operated in violation of state laws and regulations of the Illinois Department of Mines and Minerals. During the course of the removal hearing, the parties entered into a settlement agreement, which was approved by the bankruptcy court on January 11, 1989 (Document No. 284).[1] The agreement called for Mr. Leavell to pay $200,000 to the Northern Trust Company, which held the first liens on the oil and gas properties. Northern, in turn, agreed to release the properties to the trustee, who would then abandon the properties to Mr. Leavell.

The record does not indicate whether Mr. Leavell made the payment as agreed, or if Northern Trust Company released the properties to the trustee. The record merely reflects that on March 8, 1990, the trustee filed a Notice of Filing of Final Account of Trustee (Document No. 301), which included the trustee's application to abandon the oil-producing properties. On April 10, 1990, the debtor filed his objections to the application to abandon the properties (Document No. 310), complaining that they were being operated in violation of environmental statutes and regulations. The

bankruptcy court overruled the objection by oral order on April 10, 1990 (Document No. 309), followed by a written order on April 26, 1990 (Document No. 315).

As a result of these rulings, the bankruptcy court approved the trustee's final account, including abandonment of the properties (Document No. 315). However, disposition of estate proceeds was stayed pending appeal of the abandonment issue.

## II. Discussion

In a bankruptcy appeal, the bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. *See also In re Excalibur Auto. Corp.*, 859 F.2d 454, 458 (7th Cir.1988); *In re Evanston Motor Corp.*, 735 F.2d 1029, 1031 (7th Cir.1984). However, where questions of law are concerned, the district court will review the bankruptcy court's ruling *de novo*. *In re Sanderfoot*, 899 F.2d 598, 600 (7th Cir.1990); *In re Evanston Motor Corp.*, 735 F.2d at 1031. The record in this case reveals no factual dispute between the parties. The Court, therefore, will conduct its own independent review of the legal issues.

The Bankruptcy Rules provide that oral argument shall be allowed in all cases

unless the district judge or the judges of the bankruptcy appellate panel unanimously determine after examination of the briefs and record, or appendix to the brief, that oral argument is not needed....

Oral argument will not be allowed if (1) the appeal is frivolous; (2) the dispositive issues or set of issues has been recently authoritatively decided; or (3) the facts and legal arguments are adequately presented in the briefs and record and

---

1. This document was made part of the record on appeal as an appendix to the trustee's brief. Appellant complains that this attempt to supplement the record violates Bankruptcy Rule 8006. However, the Court notes that this order was in response to the motion to remove the trustee, which the appellant has included in the record

on appeal. Therefore, had the trustee not provided a copy of the bankruptcy court's order, the Court would have ordered the appellant to produce it so that the Court would have a full understanding of the bankruptcy court's position on the issues raised in this case.

the decisional process would not be significantly aided by oral argument. Bankruptcy Rule 8012. The Court finds that the facts and legal arguments of this case are well-presented in the parties' briefs and, thus, oral arguments are unnecessary.

**A. Disallowance of Eva Leavell's Claim**

Appellant Eva Leavell argues that the bankruptcy court erred in disallowing her claim as untimely. She contends that section 726(a)(3) of the Bankruptcy Code, 11 U.S.C. § 726(a)(3)(1988), allows tardy claims to be filed, but provides that they are to be subordinated to the timely filed claims of the general unsecured creditors. The trustee argues that the tardily filed claim is barred by Bankruptcy Rule 3002(c). In addition, the trustee argues that the claim was properly disallowed under Bankruptcy Code section 502(e)(1)(B) regarding contingent claims for reimbursement or contribution. 11 U.S.C. § 502(e)(1)(B).

**(1) *Untimely Filing of the Proof of Claim***

Section 726 of the Bankruptcy Code establishes the priority in which claimants are entitled to distributions of property of the estate. As the appellant points out, section 726(a)(3) sets the priority for "payment of any *allowed* unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection...." *Id.* § 726(a)(3) (emphasis added). However, the section does not, as the appellant suggests, provide for the payment of all tardily filed claims. It merely sets the priority for those tardily filed claims that have been allowed.

In order to determine whether a tardily filed claim should be allowed or disallowed, the Court must examine Bankruptcy Rule 3002. Under Rule 3002(a), an unsecured creditor "must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 1019, 3003, 3004 and 3005." With respect to the time for filing a claim, Rule 3002(c) requires that a claim be filed within 90 days after the first date set for the meeting of creditors called pursuant to section 341(a) of the Code.

■ Bankruptcy Rule 3003(c) provides that, "for cause shown," the court may extend the time within which proofs of claim or interest may be filed. However, this rule must be read in conjunction with Rule 9006(b), which provides that "[t]he Court may enlarge the time for taking action under Rules 1006(b)(2), 3002(c), 4003(b), 4004(a), 4007(c), 8002, and 9003, *only to the extent and under the conditions stated in those rules.*" Bankruptcy Rule 9006(b) (emphasis added). Six specific instances allowing extension of the 90–day period are set out in Rule 3002(c). Thus, the rules do not permit enlargement of time fixed under Rule 3002(c) except as provided in those six exceptions.

■ The only exception possibly relevant to this case is subsection (c)(6), which provide that "[i]n a chapter 7 liquidation case, if a surplus remains after all claims allowed have been paid in full, the court may grant an extension of time for the filing of claims against the surplus not filed within the time herein above prescribed." However, it is undisputed in this case that there is no surplus in the bankruptcy estate. The trustee's Notice of Filing of Final Account (Document No. 301) indicates that the administrative and priority expenses exceed the amount of money available to distribute by more than $50,000. Beyond that, the final account lists more than $1.36 million in general unsecured claims. Therefore, the chances of having a surplus to pay the appellant's claim are extremely remote.

Indeed, the appellant herself is well aware of the unlikelihood of recovering anything from the bankruptcy estate. In presenting the claim before the bankruptcy court, appellant's counsel stated that "[i]t's realized that there be no distribution to her...." Report of Bankruptcy Court Proceedings, No. BK 85–40274, April 10, 1990, at 2. He said the claim was being filed "merely as recognition that she has a claim as an accommodation-maker to the bankrupt, Daniel Leavell." *Id.* Moreover,

her brief acknowledges that due to the amount of the priority claims, it appears that there will be no dividend for general, unsecured creditors. Appellant's Brief at 5.

### (2) *Contingent nature of the claim*

■ The trustee also argues that the appellant's claim was properly disallowed because it was still contingent at the time it was filed and at the time the final account was approved by the bankruptcy court. Indeed, there is no dispute as to the contingent nature of the claim. As explained in the appellant's brief, the claim was based upon the fact that the White County Bank had filed a foreclosure action against her on a note she had signed as an accommodation to her husband, Daniel Leavell. Thus, upon the initiation of this suit, the appellant had a contribution claim against her husband.

Section 502(e) of the Bankruptcy Code states that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the creditor, to the extent that— ... (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution...." 11 U.S.C. § 502(e)(1)(B) (1988).

As explained in the legislative history to the Bankruptcy Code, section 502(e) requires disallowance of a claim for reimbursement or contribution unless the claim of the original creditor has been paid in full. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 354, *reprinted in* 1978 U.S.Code, Cong. & Admin.News 5787, 5963, 6310. The purpose of this provision is to prevent "competition between a creditor and his guarantor for the limited proceeds in the estate." *Id.* Thus, it is clear under section 502(e)(1)(B) that the appellant's claim must be disallowed until a judgment is rendered

and executed against the appellant in the foreclosure action.

The appellant's brief suggests that she would not have appealed the bankruptcy court's ruling if it had been based upon section 502(e). But she also argues that the trustee's section 502(e) argument failed to consider section 509(c), which states that

The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution, of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

11 U.S.C. § 509(c) (1988). The appellant appears to be arguing that under section 509(c), her claim would be subordinated, rather than disallowed.

■ The Court, however, finds section 509(c) inapplicable to the appellant's case. Section 509(c) establishes the status of reimbursement or contribution claims that have been *allowed* by the bankruptcy court. Thus, once a claim has been allowed, section 509(c) subordinates the claim to the claim of an assured creditor until the creditor's claim is paid in full. Appellant's claim, on the other hand, has not been allowed. Indeed, the Court finds that it is *disallowed* under section 502(e), as well as for being untimely under Bankruptcy Rule 3002. Accordingly, the Court holds that the bankruptcy court properly disallowed the appellant's claim.[2]

### B. Notice to Debtor of Application for Attorney's Fees

Appellant Daniel Leavell argues that the bankruptcy court erred in refusing to allow him to file an objection to the attorney's fees sought by the trustee's attorney after the deadline for filing objections had passed. In an affidavit filed with the bank-

---

**2.** The appellant's proof of claim also states that as an accommodation to Daniel Leavell, the appellant signed a $250,000 note payable to the First National Bank of Oblong, and that she paid the note out of her own funds on November 5, 1987. This portion of the claim has not been raised on appeal and is therefore waived. However, the Court notes that its ruling regarding the tardiness of the claim applies to the entire claim. Therefore, this portion of the claim was also properly disallowed pursuant to Bankruptcy Rule 3002(c).

ruptcy court (Document No. 306), Mr. Leavell states that he never received a copy of the notice seeking approval of the attorney's fees. If he had received notice, he says that he would have filed an objection within the specified time period.

The record in this case shows that notice was mailed to the debtor and his attorney on January 18, 1989 (Document No. 286). The appellant has no evidence, and therefore cannot dispute that his former attorney received the notice. Report of Bankruptcy Court Proceedings, No. BK 85–40274, April 10, 1990, at 4. However, he argues that service solely upon his attorney is insufficient in this case.

■ The appellant contends that applications for attorney's fees are contested matters, which, under Bankruptcy Rule 9014, require service "in the manner provided for service of a summons and complaint by Rule 7004...." Bankruptcy Rule 9014. The trustee, argues, however, that applications for attorney's fees are administrative matters and, as such, are subject to Bankruptcy Rule 7005, which adopts Federal Rule of Civil Procedure 5 and allows service upon a party's attorney. In the trustee's view, such applications are generally not contested matters; they become contested matters only if an objection to the application is filed. The Court agrees.

The Advisory Committee Note to Rule 9014 states that "[w]henever there is an *actual dispute,* other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter." Bankruptcy Rule 9014 Advisory Committee Note (emphasis added). The advisory committee further adds that, "[i]f a party in interest opposes the amount of compensation sought by a professional, there is a dispute which is a contested matter." Thus, a contested matter does not arise until there is an actual dispute—raised by an objection to an application for compensation. The application itself does not present an actual dispute.

■ Moreover, the Court notes that even if Bankruptcy Rule 7004 were applied to this case, its requirements have been satisfied. Rule 7004 adopts the general rules of

service in Federal Rule of Civil Procedure 4. However, Rule 7004(b) also provides for service by first class mail "to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." Bankruptcy Rule 7004(b). The record in this case reflects that such a mailing was indeed made to the appellant, thus fulfilling the requirement of Rule 7004(b). It is important to note that Bankruptcy Rule 7004(b) does not require acknowledgement of service by mail—unlike the Federal Rule of Civil Procedure 4(c)(2)(C)(ii), which requires that a postage-paid acknowledgement form accompany service by mail and, if no acknowledgement is received, personal service becomes necessary.

Service under Rule 7004(b) comports with the procedural due process requirements identified by the Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In that case, the Court stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In the appellant's case, not only was notice properly mailed to the appellant pursuant to Bankruptcy Rule 7004(b), but notice also was mailed to the appellant's counsel. Thus, the appellant received notice reasonably calculated to apprise him of the proceedings regarding the application for attorney's fees.

Accordingly, the Court holds that the bankruptcy court properly denied appellant Daniel Leavell's request to file an objection to the application for attorney's fees after the deadline for such objections had passed.

## C. Abandonment of the Oil–Producing Properties

Appellant Daniel Leavell also objects to the bankruptcy court's order allowing the trustee to abandon certain oil-producing

properties in the estate. He argues that the trustee operated the properties in violation of environmental laws, thus exposing the debtor to fines and penalties for these violations if the property is abandoned to him.

The appellant's arguments present two separate issues: (1) whether the trustee should be allowed to abandon the property; and (2) who should pay for any liability for violation of environmental laws and regulations that occurred while the trustee was operating the properties. With respect to the abandonment issue, both parties agree that this case is controlled by *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

In *Midlantic*, the Supreme Court held that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Id.* at 507, 106 S.Ct. at 762. However, the Court added in a footnote that

> [t]his exception to the abandonment power vested in the trustee by § 554 is a narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.

*Id.*

Unfortunately, the *Midlantic* opinion does not fully explain this qualification. As a result, the bankruptcy courts and other lower federal courts have reached inconsistent results in interpreting the decision. Some courts have given a broad interpretation to the *Midlantic* opinion, holding that it requires full compliance with applicable environmental laws prior to abandonment. *See, e.g., In re Peerless Plating Co.*, 70 B.R. 943, 946–47 & n. 1 (Bankr.W.D.Mich.1987). Others, however, have interpreted the opinion more narrowly, holding that the *Midlantic* exception applies only where there is an imminent

danger to public health and safety. *See, e.g., In re Smith–Douglass, Inc.*, 856 F.2d 12, 15–17 (4th Cir.1988); *In re Franklin Signal Corp.*, 65 B.R. 268, 271–72 (Bankr. D.Minn.1986).

■ The Court agrees with the reasoning of the cases favoring the narrower interpretation. This view appears consistent with the Supreme Court's observation in *Midlantic* that "[t]he Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety." *Midlantic*, 474 U.S. at 506–07, 106 S.Ct. at 762. Thus, in order to comply with the mandate of *Midlantic*, the bankruptcy court must first determine whether conditions on the property pose an immediate and identifiable threat to the public health or safety. If that question is answered in the affirmative, the bankruptcy court may allow abandonment only after proper steps are taken to adequately protect public health and safety. *See Smith–Douglass*, 856 F.2d at 16.

One court has identified five factors which should be considered to determine whether abandonment should be permitted. *In re Franklin Signal Corp.*, 65 B.R. 268, 272 (Bankr.D.Minn.1986). They are: (1) the imminence of danger to the public health and safety; (2) the extent of probable harm; (3) the amount and type of hazardous waste; (4) the cost to bring the property into compliance with environmental laws; and (5) the amount and type of funds available for cleanup. *Id.*

At a minimum, I believe that *Midlantic* requires that the trustee comply with two conditions before abandoning property contaminated with hazardous waste. First, the trustee must conduct an investigation to determine what hazardous substances, if any, burden the property. Second, the trustee must inform the appropriate state and federal agencies of the situation, including the trustee's intent to abandon. Any other conditions the bankruptcy court may formulate will depend upon the facts of the particular

case in light of the factors set forth earlier.

*Id.*

The bankruptcy court did not make a determination in the case at bar as to whether the oil-producing properties pose an immediate and identifiable health risk. The Court, therefore, holds that the bankruptcy court erred in allowing the abandonment of these properties without such a finding and remands the case for further proceedings.

The second issue is who should pay any fines, penalties or cleanup costs associated with environmental violations that may have occurred while the oil-producing properties were under the trustee's control. The trustee's attorney has acknowledged that the oil wells are contaminated. However, the full extent of the environmental problems and the cost to remedy the situation have not been established. Moreover, the record is unclear as to whether the contamination is due solely to the trustee's conduct, or whether the environmental violations began while the properties were under Mr. Leavell's control and merely continued under the trustee's operation.

Under 28 U.S.C. § 959(b), a trustee "shall manage and operate the property in his possession as such trustee ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." Subsection (a) of the statute provides that trustees "may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). Thus, the Court agrees with the appellant that the trustee may be held liable for any violations of state or federal environmental laws that occurred while the oil-producing properties were in the trustee's possession.

The Court disagrees, however, with the appellant's argument as to how any fines, penalties or cleanup costs will be funded. The appellant objected to the bankruptcy court's suggestion that such costs would qualify as administrative expenses. Report of Bankruptcy Court Proceedings, No. BK 85–40274, April 10, 1990, at 9–12. But several recent court cases have agreed that "[c]leaning up environmental violations is properly considered an administrative expense within the meaning of 11 U.S.C. § 507(a)(1)." *Smith–Douglass,* 856 F.2d at 15. *Accord In re Better–Brite Plating Inc.,* 105 B.R. 912, 917 (Bankr.E.D.Wis. 1989); *In re Peerless Plating,* 70 B.R. 943 (Bankr.W.D.Mich.1987).

■ Although these cases involved the costs of cleaning up environmental problems caused by the debtor, the same result should obtain where the liability results from the trustee's actions in operating a business during bankruptcy proceedings. The Supreme Court has held that tort claims resulting from the negligence of a trustee acting within the scope of his authority as entitled to priority status as administrative expenses. *Reading Co. v. Brown,* 391 U.S. 471, 483, 88 S.Ct. 1759, 1765–66, 20 L.Ed.2d 751 (1968). It follows that any fines, penalties or cleanup costs caused by a trustee's violation of environmental laws during the operation of a business should also be considered administrative expenses.[3]

Therefore, this case is remanded to the bankruptcy court with directions to (1) determine whether any environmental violations occurred while the trustee was in control of the oil-producing properties; (2) determine whether the estate is liable for

---

3. The appellant suggests in his brief that the trustee should not be permitted to reserve funds as an administrative expense because the costs resulted from the trustee's own wrongful conduct. Thus, the appellant argues that the trustee should be required to seek other sources to protect against these violations. The Court is unclear as to what other sources the trustee should rely upon. To the extent that the appellant is suggesting that the trustee should be personally liable for these costs, that suggestion is rejected. "A trustee may be held personally liable only for a *willful and deliberate violation* of his fiduciary duties." *In re Chicago Pacific Corp.,* 773 F.2d 909, 915 (7th Cir.1985). The appellant has made no allegation in this case that the trustee has breached his fiduciary duties.

any fines, penalties or cleanup costs associated with the violations, if any; and (3) provide for the payment of such costs before closing the bankruptcy estate.

### III. Summary

Based upon the foregoing analysis, the Court holds that the bankruptcy court properly disallowed appellant Eva Leavell's claim against the bankruptcy estate and properly denied appellant Daniel Leavell's request to file an objection to the application for attorney's fees after the deadline for such objections had passed. However, the Court holds that the bankruptcy court erred in allowing the trustee to abandon the oil-producing properties in the estate without first determining whether the condition of the properties pose an immediate and identifiable risk to public safety and health.

Accordingly, the bankruptcy court's order of April 26, 1990, is AFFIRMED in part, REVERSED in part, and REMANDED with instructions to conduct further proceedings in accordance with this opinion.

IT IS SO ORDERED.