In re **CHATEAUGAY CORPORATION,**
**Reomar, Inc., the LTV Corporation,**
**et al., Debtors.**

**SOUTH CHICAGO DISPOSAL,**
**INC., Appellant,**

v.

**LTV STEEL COMPANY, INC., Appellee.**

**No. 90 Civ. 5623 (RWS).**

United States District Court,
S.D. New York.

July 19, 1991.

Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill. (Sharon Swarsensky Bilow, of counsel), for appellant.

Kay, Scholer, Fierman, Hays & Handler (Michael J. Crames, Edmund M. Emrich, of counsel), Davis Polk & Wardwell, New York City, for appellee.

OPINION

SWEET, District Judge.

This is an appeal filed by South Chicago Disposal, Inc. ("South Chicago") from an order dated July 9, 1990 (the "Order") issued by the Honorable Burton R. Lifland, Chief Judge of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") denying a motion of South Chicago to compel LTV Steel Company, Inc. ("LTV Steel") to assume as an executory contract under § 365 of the Bankruptcy Code (the "Code") the contract between LTV Steel and South Chicago for the removal, transport and disposal of hazardous and non-hazardous waste (the "Motion"). The Order is affirmed.

*Background*

In 1983 the United States Environmental Protection Agency issues a clean-up order requiring LTV Steel to remove electric arc furnace dust from the land surrounding LTV Steel's Chicago plant. This dust, which is composed of lead oxide, and is a hazardous waste, had been generated by LTV Steel.

In order to comply with the EPA's clean-up order, LTV Steel, having inspected certain landfill facilities, in early 1986 awarded a contract to South Chicago to transport and dispose of the waste material by way

of certain purchase orders (the "Purchase Orders"), an example of which is attached as an Appendix to this opinion. The only contracts between LTV Steel and South Chicago or the landfill owners are the Purchase Orders.

South Chicago performed the services called for under the Purchase Orders and delivered LTV Steel's waste to the two landfills, paying all charges in that connection. For all of its services under the contract with LTV Steel, South Chicago is owed $514,468.44.

This court has jurisdiction of the appeal pursuant to 28 U.S.C. § 158(a) which provides that the "district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees...."

*Proceedings Below*

South Chicago filed its Motion with the Bankruptcy Court in May 1988, and after a hearing had been adjourned from time to time on consent of both parties, argument was heard on June 25, 1990. On July 9, the Bankruptcy Court issued the Order denying the Motion, holding, *inter alia*, that:

(i) the Purchase Orders are not storage contracts, but rather are contracts solely for the removal, transport and disposal of hazardous and non-hazardous waste (Order at ¶ 1; Tr. at 30, 31);

(ii) with the exception of LTV Steel's monetary obligation to pay South Chicago sums due pre-petition under the Purchase Orders, there are no material performance obligations remaining on the part of South Chicago or LTV Steel under the Purchase Orders (Order at ¶ 2; Tr. at 31);

(iii) the Purchase Orders are not executory contracts which can be assumed or rejected under § 365 of the Code (Order at ¶ 3; Tr. at 31);

(iv) even if the Purchase Orders were executory contracts, their assumption or rejection under § 365 of the Code would have no bearing whatsoever on the environmental liability or cleanup obligations of LTV Steel

or South Chicago. Rather, such assumption or rejection would impact only the claim priority status of South Chicago in LTV Steel's chapter 11 case, *i.e.,* whether South Chicago holds a pre-petition general unsecured claim which is to be paid under a plan of reorganization or a post-petition administrative priority claim which is to be paid in full at the present time (Order at ¶ 4; Tr. at 31, 32);

(v) even if the Purchase Orders were executory contracts, there is no legal basis upon which LTV Steel could be compelled to assume them under § 365(a) of the Code (Order at ¶ 6; Tr. at 32);

(vi) even if the Purchase Orders were executory contracts, the assumption or rejection thereof would be governed by the business judgment standard (Tr. at 31–32; *see* Tr. at 26–27); and

(vii) even if the Purchase Orders were executory contracts, it would not be in the best interests of LTV Steel's estate to assume them under § 365(a) of the Code (Order at ¶ 5; Tr. at 31).

This appeal was filed on July 11, 1990 and heard by agreement of the parties on April 5, 1991.

### Standard of Review

The standard of review for a district court in an appeal of a bankruptcy court decision is set forth in Bankruptcy Rule 8013, which provides that the Bankruptcy Court's findings of fact should not be set aside unless they are found to be "clearly erroneous." *In re Beker Industries Corp.,* 89 B.R. 336, 342 n. 5 (S.D.N.Y.1988); *In re Allied Artists Pictures Corp.,* 71 B.R. 445, 448 (S.D.N.Y.1987); *In re Johns–Manville Corp.,* 68 B.R. 155, 157–58 (S.D.N.Y.1986). Conclusions of law, however, are to be reviewed *de novo. In re Beker Industries Corp.,* 89 B.R. at 342 n. 5; *In re Allied Artists Pictures Corp.,* 71 B.R. at 448.

### The Contracts Between LTV Steel And South Chicago Are Not Executory

Section 365 authorizes a debtor in possession to assume or reject executory contracts or unexpired leases subject to court approval. The legislative history of this section states that "[t]hough there is no precise definition of what contracts are executory, it generally includes contracts on which performance remains due to some extent on both sides." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977), *reprinted in,* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6303; *accord, NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984). One authority has commented that an executory contract is

a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). A number of circuits have applied this definition. *See, e.g., Counties Contracting & Construction Co. v. Constitution Life Ins. Co.,* 855 F.2d 1054, 1060 (3d Cir.1988); *In re Speck,* 798 F.2d 279, 279–80 (8th Cir.1986); *In re Pacific Express, Inc.,* 780 F.2d 1482, 1487 (9th Cir. 1986); *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers,* 756 F.2d 1043, 1045 (4th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *In re Select–A–Seat Corp.,* 625 F.2d 290, 292 (9th Cir.1980); *In re Jolly,* 574 F.2d 349, 351 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978) (applying "functional definition" of executory contract based upon underlying purpose of § 365 of enhancing debtor's estate).

Relying upon the continuing nature of the duties arising out of the disposition of waste materials, South Chicago has characterized the Purchase Orders as executory contracts for removal of the wastes and their storage, under which LTV Steel has retained title to the wastes, rather than as

a contract for services which have been performed. In support of this argument, South Chicago cites 40 C.F.R. § 264.117, which provides for a continuing liability for thirty years after each hazardous management unit in the landfill is closed, and 40 C.F.R. § 264.73, which insures that the landfill owners can locate and identify the material disposed of by LTV Steel. It has analogized the Purchase Orders to a warehouse lease in which a landlord agrees to store the property of a debtor. It asserts that the Purchase Orders constitute a contract for the storage of the waste. Alternatively, it argues that there is at least a contract implied in fact. Therefore, the Purchase Orders are executory contracts and may be payable under § 365.

South Chicago has maintained that by paying the landfill storage charges it became subrogated to the rights of the landfills. Subrogation is said to apply because (1) the original claim or debt gave rise to an enforceable right by the subrogor *i.e.,* the landfills); (2) the debt was paid in full by the subrogee (*i.e.,* South Chicago); (3) the subrogee paid the debt for which a third party (*i.e.,* LTV Steel) is primarily liable; (4) the subrogee is seeking to enforce the right which the subrogor has against the third party, citing *American National Bank and Trust Company of Chicago v. Weyerhauser Co.,* 692 F.2d 455 (7th Cir. 1982); *Medigroup, Inc. v. Schildknecht,* 463 F.2d 525 (7th Cir.1972).

■ Whatever LTV Steel's statutory obligations and potential liability may be under applicable environmental laws, South Chicago has failed to establish that LTV Steel intended to bind itself to an ongoing hazardous waste storage agreement with either South Chicago or the landfill owners. In the absence of the requisite intent to be bound, there can be no finding of an implied-in-fact contract. *Midcoast Aviation, Inc. v. General Electric Credit Corp.,* 907 F.2d 732, 743 (7th Cir.1990); *see Overseas Development Disc Corp. v. Sangamo Construction Co.,* 840 F.2d 1319, 1330 (7th Cir.1988).

There is no contract between LTV Steel and the landfill owners, and thus South Chicago cannot be subrogated to the alleged waste storage obligations of the landfill owners.

It is axiomatic that for a right of subrogation to exist, the subrogor must possess a right which he could enforce against a third party. The subrogee can have no greater rights than the subrogor and can enforce only such rights as the subrogor could enforce against the third party.

*Continental Casualty Co. v. Polk Brothers, Inc.,* 457 N.E.2d 1271, 120 Ill.App.3d 395, 75 Ill.Dec. 712 (1983). The sole contractual agreements between the parties are the Purchase Orders.

■ South Chicago has fulfilled all of its obligations to LTV Steel under each of the pre-petition Purchase Orders in this regard by removing, transporting and disposing of waste as required by the Purchase Orders. A contract is not executory where the non-debtor party has rendered full performance of its obligations, regardless of whether the debtor has rendered any performance at all. *E.g., In re J.M. Fields, Inc.,* 22 B.R. 861 (Bankr.S.D.N.Y.1982); *see also* B. Weintraub & A. Resnick, *Bankruptcy Law Manual,* ¶ 7.10 at 7–55 (Rev. ed.1985).

Nor does the contractual provision contained in the Purchase Orders which compels compliance with state and federal laws and regulations in connection with the handling of the wastes create an independent ongoing obligation for the purpose of determining whether a contract is executory under § 365. Whatever obligations South Chicago may have under federal environmental statutes such as the Comprehensive Environmental Response Compensation and Liability Act of 1980, 42 U.S.C. §§ 9607(a)(4) and 9607(e)(1), which may arise by operation of law and will continue to exist independently of the Purchase Orders, are not owed to LTV Steel, but rather to the state and federal authorities.

■ The only contractual obligation LTV Steel had to South Chicago under the Purchase Orders at the time its Chapter 11 case was filed was the obligation to pay the Purchase Order charges. A debtor's obligation to pay money, standing alone, is

166

insufficient to render a contract executory. *E.g., In re Newcomb,* 744 F.2d 621 (8th Cir.1984); *In re Grayson–Robinson Stores, Inc.,* 321 F.2d 500 (2d Cir.1963).

Congress clearly intended a distinction between the treatment of ongoing contracts, "on which performance remains due to some extent on both sides," and fully accrued debts, on which "the only performance that remains is repayment." H.R.Rep. No. 595, 95th Cong., 1st Sess. 347, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6304–04. The distinction is fundamental to the purposes of bankruptcy law. If the debtor's obligation already has been reduced to an obligation to pay money, then it is subject to treatment according to the scheme of priorities established by the Bankruptcy Code. If the obligation requires performance in the future, then the trustee or debtor-in-possession must assess whether fulfilling the obligation will benefit or burden the debtor's estate. Bankruptcy law then allows the trustee or debtor-in-possession the unique option of assuming or rejecting the contract in order to enhance the debtor's estate.

*In re Dartmouth House Nursing Home,* Civ. A. No. 84–667–Z, 1985 WL 17642, slip op. at 2 (D.Mass. Sept. 25, 1985).

Here, LTV Steel's only obligation to South Chicago is the pre-petition obligation to pay for the services provided pursuant to the Purchase Orders. Therefore, the Purchase Orders are not executory contracts which can be assumed or rejected.

*Even If the Purchase Orders Were Executory Contracts, LTV Steel Could Not Be Compelled To Assume The Obligations*

■ On its face, § 365(a) of the Code is permissive, not mandatory. It provides that the trustee (or debtor in possession), subject to court approval, "may assume or reject any executory contract or unexpired lease of the debtor." The right of the trustee or debtor in possession to assume or reject executory contracts is discretionary. *See, e.g., In re Minges,* 602 F.2d 38, 43 (2d Cir.1979) (case under former Bankruptcy Act); *In re Bohack Corp.,* 431 F.Supp. 646, 656 (E.D.N.Y.), *aff'd,* 567 F.2d

237 (2d Cir.1977), *cert. denied,* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978) (case under former Bankruptcy act); *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1358 (9th Cir.1983). Neither the non-debtor party to an executory contract nor the bankruptcy court can compel the debtor to assume the contract.

In giving the trustee (or debtor in possession) the option to assume or reject executory contracts, Congress sought to further the reorganization policies underlying chapter 11 of the Code:

Reorganization under Chapter 11 of the Bankruptcy Code, by definition, involves the restructuring of a qualifying debtor's financial arrangements so that the debtor is afforded the opportunity to achieve renewed viability. In order to relieve the debtor of the burden of meeting certain of its pre-filing contractual commitments, and to simultaneously preserve those contractual commitments which will make rehabilitation possible, the Chapter 11 trustee or debtor-in-possession, as the case may be, is given the option, upon satisfying the requirements of § 365 and gaining the Court's approval, of assuming or rejecting any of the debtor's executory contracts or unexpired leases.

*In re Lafayette Radio Electronics Corp.,* 7 B.R. 189, 191 (Bankr.E.D.N.Y.1980).

It has been held that "the trustee in bankruptcy [or debtor in possession] may abandon burdensome property and reject unprofitable executory contracts in order to further the best interests of the estate." *In re New York Investors Mutual Group, Inc.,* 143 F.Supp. 51, 54 (S.D.N.Y.1956).

South Chicago has cited *Midlantic National Bank v. New Jersey Dept. of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), in support of its assertion that LTV Steel can be compelled to assume the Purchase Orders. In *Midlantic,* a chapter 7 debtor, without making any provision for even the most minimal form of public protection, sought to abandon thousands of gallons of oil contaminated with a substance characterized by the court as a highly toxic carcinogen in relatively populated sites in New York and

New Jersey. There the debtor was attempting to rid itself of cleanup obligations and environmental liability by abandoning hazardous waste. Here, LTV Steel has performed as directed and any of the Purchase Orders has not been shown to have any effect on whatever environmental liabilities it may have now or in the future. The public policy concerns addressed by *Midlantic* are noticeably absent here.

■ Cases following *Midlantic* have made clear that the only policy concern of the environmental laws that will impinge upon a debtor's otherwise unfettered right to abandon its property is that an imminent and identifiable hazard may not be created. *See, e.g., In re Smith–Douglass, Inc.,* 75 B.R. 994, 998 (E.D.N.C.1987); *In re Franklin Signal Corp.,* 65 B.R. 268, 273 (Bankr. D.Minn.1986); *In re Oklahoma Refining Co.,* 63 B.R. 562, 565 (Bankr.W.D.Okla. 1986) In the present case, there is no allegation by South Chicago that the waste in question poses an imminent and identifiable threat to public health and safety. Thus, under the *Midlantic* rationale, LTV Steel's rejection power under § 365 of the Code (which South Chicago has analogized to a trustee's abandonment power) would remain unaffected and unfettered.

On the facts presented it may well be that South Chicago seeks not to remedy an environmental hazard, but to improve its status in the chapter 11 case from that of a general unsecured creditor to that of an administrative expense claimant. In any case, LTV Steel cannot be required to assume whatever duty may be said to remain under the Purchase Orders, even if executory.

South Chicago contends that the holding in *NLRB v. Bildisco & Bildisco, supra,* which applied a somewhat stricter standard for rejection of executory collective bargaining agreements, should be expanded to cover the Purchase Orders. When a debtor in possession attempts. to reject a collective bargaining agreement under the Code, its action is in direct conflict with Congress' directives under § 8(d) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(d). *See Bildisco,* 465 U.S. at 532–34, 104 S.Ct. at 1199–1200. Indeed, the Code has been amended to provide the procedure for rejection of a collective bargaining agreement, *see In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 989–90 (2d Cir.1990), thus *Bildisco* does not control the outcome here.

The primary goal of a reorganization proceeding is to enable a debtor to restructure its business so as to be able to continue in operation. The option of the debtor to reject an executory contract is important to that goal.

For the foregoing reasons the Order of the Bankruptcy Court should be affirmed.

It is so ordered.

# APPENDIX

**▦▦▦ Steel**

EQUAL EMPLOYMENT OPPORTUNITY EMPLOYER

| PAGE | 1 |
|------|---|
| OF | 3 |

FOR LTV USE ONLY

THESE NOS. MUST BE SHOWN ON ALL DOCUMENTS
CONFIRM ALL DELIVERY SCHEDULES DIRECT TO

DATE: 06/04/86

| VENDOR CODE | BUYER |
|-------------|-------|
| 82745900 | MURCER, G M |

**VENDOR:**
SOUTH CHICAGO DISPOSAL INC
11834 S EWING AVE
P O BOX 17557
CHICAGO IL 60617

**SHIP TO:**
LTV STEEL COMPANY
P.O. NO./REL NO. 787025
TRUCK STA. NO./TR. NO. 0001
CENTRAL RECEIVING
116 E BURLEY AVENUE
CHICAGO, IL 60617

MARK FOR: HEINE J A

| F.O.B. | OUR PLANT | SHIP'G POINT | TERM CODE | TERMS | DATE REQUIRED | SHIP VIA |
|--------|-----------|--------------|-----------|-------|---------------|----------|
| X | | | 69 | NET 60 DAYS | 05/06/86 | BEST WAY |

**NO PARTIAL OR COLLECT SHIPMENTS UNLESS AUTHORIZED**

**PLEASE FURNISH THE FOLLOWING, SUBJECT TO THE CONDITIONS AND TAX INSTRUCTIONS SHOWN ON THE REVERSE SIDE.**

| ITEM NUMBER | QUANTITY ORDERED | UNIT | BLANKET ITEM NO. OR ITEM COMM CODE | DESCRIPTION | UNIT PRICE |
|-------------|------------------|------|-----------------------------------|-------------|------------|
| 1 | 18 | YD | 580623 | ILLINOIS DISPOSAL TAX | 6.06 |
| 2 | 2 | EA | 580623 | LINER | 50.00 |
| 3 | 18 | YD | 580623 | CID DAILY GENERATION SECONDARY PRECIPITATOR DUST | 65.00 |
| 4 | 2 | EA | 580623 | TRANSPORTATION CHARGES /PER LOAD/ | 140.00 |

FOR PERIOD 4/15 THRU 4/30/86
CONF: CAROL BOYER
BY: JOHN TRATAR 05/06/86

THE TERMS OF THIS ORDER REQUIRE
COMPLIANCE WITH ALL GOVERNMENT
REGULATIONS. SINCE THE HAULING AND
ULTIMATE DISPOSAL OF WASTE MATERIAL
IS SUBJECT TO GOVERNMENT REGULATION, THE
FOLLOWING CONDITION OF THIS ORDER IS
CALLED TO YOUR ATTENTION --

AN ADDITIONAL CONDITION OF THIS ORDER
REQUIRES COMPLIANCE WITH ALL

TAX STATUS: CHARGE STATE SALES TAX
DISTRICT TAX CODE 129

**IMPORTANT:** All information, including complete Purchase Order Number shown in "SHIP TO" area must be shown on all freight bills, bills of lading, packing slips and invoices. Material ordered must be delivered to "SHIP TO" address.

INVOICES ONLY IN DUPLICATE TO:
LTV Steel Company
ACCOUNTS PAYABLE, ROOM 505
1600 WEST CARSON ST.
PITTSBURGH, PA 15263-0001

ADDRESS CORRESPONDENCE TO BUYER AT:
LTV Steel Company
P.O. BOX 5159
CLEVELAND, OHIO 44101

BY *Gary M Murcer*

**VENDOR COPY**

**Steel**

AL EMPLOYMENT OPPORTUNITY EMPLOYER

WRK 7081303

PAGE 2
OF 3

COMMODITY CODE
22

FOR LTV USE ONLY

PURCHASE ORDER NO.

ORDER NO. 787025 RELEASE NO.

THESE NOS. MUST BE SHOWN ON ALL DOCUMENTS

DATE: 06/04/86

| VENDOR CODE | BUYER |
|---|---|
| 82745900 | MURCER, G M |

SOUTH CHICAGO DISPOSAL INC
11834 S EWING AVE
P O BOX 17557
CHICAGO IL 60617

SHIP TO

LTV STEEL COMPANY
P.O. NO./REL NO. 787025
TRUCK STA. NO./TR. NO. 0001
CENTRAL RECEIVING
116 E BURLEY AVENUE
CHICAGO, IL 60617

MARK FOR: HEINE J A

| FOB | OUR PLANT | SHIP'G POINT | TERM CODE | TERMS | DATE REQUIRED | SHIP VIA |
|---|---|---|---|---|---|---|
| X | | | 69 | NET 60 DAYS | 05/06/86 | BEST WAY |

NO PARTIAL OR COLLECT SHIPMENTS UNLESS AUTHORIZED

PLEASE FURNISH THE FOLLOWING, SUBJECT TO THE CONDITIONS AND TAX INSTRUCTIONS SHOWN ON THE REVERSE SIDE.

| ITEM NUMBER | QUANTITY ORDERED | UNIT | BLANKET ITEM NO OR ITEM COMM CODE | DESCRIPTION | UNIT PRICE |
|---|---|---|---|---|---|
| | | | | GOVERNMENT REGULATIONS. | |
| | | | | IF ANY EXISTING, OR HEREAFTER ENACTED FEDERAL, STATE OR LOCAL LAW, REGULATION OR ORDINANCE REQUIRES A PERMIT, LICENSE OR OTHER APPROVAL — HEREINAFTER "PERMITS" — FOR THE HAULING AND/OR DISPOSAL OF THE WASTE MATERIAL TO BE REMOVED FROM BUYER'S PROPERTY IN ACCORDANCE WITH THE CONDITIONS OF THIS PURCHASE ORDER, THE VENDOR CERTIFIES THAT HE OR THE OWNER OF THE PROPERTY ON WHICH THE WASTE MATERIAL WILL BE DISPOSED, HAS OBTAINED, OR WILL PROMPTLY OBTAIN, ALL SUCH PERMITS AND THE VENDOR AGREES TO SUBMIT COPIES OF ALL SUCH PERMITS TO THE BUYER. | |
| | | | | THIS CONDITION IS REQUIRED IN ORDER THAT THE BUYER MAY BE SATISFIED THAT THIS WASTE MATERIAL IS BEING DISPOSED OF IN ACCORDANCE WITH APPLICABLE LAWS AND REGULATIONS. | |

TAX STATUS   CHARGE STATE SALES TAX
DISTRICT TAX CODE 129

**IMPORTANT:** All information, including complete Purchase Order Number shown in "SHIP TO" area must be shown on all freight bills, bills of lading, packing slips and invoices. Material ordered must be delivered to "SHIP TO" address.

INVOICES ONLY IN DUPLICATE TO:
LTV Steel Company
ACCOUNTS PAYABLE, ROOM 605
1600 WEST CARSON ST.
PITTSBURGH, PA 15263-0001

ADDRESS CORRESPONDENCE TO BUYER AT:
LTV Steel Company
P.O. BOX 6159
CLEVELAND, OHIO 44101

BY _____

**Steel**

AL EMPLOYMENT OPPORTUNITY EMPLOYER

WRK 7081303 | CL DITY CODE BASE 5222 | ORDER NO. 787025 | RELEASE NO.

PAGE 3
OF 3

FOR LTV USE ONLY

PURCHASE ORDER NO.

THESE NOS. MUST BE SHOWN ON ALL DOCUMENTS
CONFIRM ALL DELIVERY SCHEDULES DIRECT TO

DATE: 06/04/86

VENDOR CODE        BUYER
82745900      MURCER, G M

VENDOR
SOUTH CHICAGO DISPOSAL INC
11834 S EWING AVE
P O BOX 17557
CHICAGO  IL      60617

SHIP TO
LTV STEEL COMPANY
P.O. NO./REL. NO.  787025
TRUCK STA. NO./TR NO. 0001
CENTRAL RECEIVING
116 & BURLEY AVENUE
CHICAGO, IL  60617

MARK FOR:  HEINE J A

FB PLANT X | SHIP'G POINT | TERM CODE 69 | TERMS  NET 60 DAYS | DATE REQUIRED 05/06/86 | SHIP VIA  BEST WAY

NO PARTIAL OR COLLECT SHIPMENTS UNLESS AUTHORIZED

PLEASE FURNISH THE FOLLOWING, SUBJECT TO THE CONDITIONS AND TAX INSTRUCTIONS SHOWN ON THE REVERSE SIDE.

| ITEM NUMBER | QUANTITY ORDERED | UNIT | BLANKET ITEM NO. OR ITEM COMM CODE | DESCRIPTION | UNIT PRICE |
|---|---|---|---|---|---|
| | | | | IN THE EVENT THAT ANY PERMIT, LICENSE OR OTHER APPROVAL REQUIRED BY LAW HAS NOT BEEN GRANTED, THE VENDOR SHALL PROMPTLY FURNISH THE BUYER WITH A COPY OF HIS APPLICATION TOGETHER WITH A LETTER ADVISING WHAT ACTION HE HAS TAKEN TO EXPEDITE THE GRANTING OF THE PERMIT, LICENSE OR OTHER APPROVAL. | |
| | | | | CC:  SOREN HANSEN CORP ENVIRONMENTAL CONTROL CLEVELAND WORKS. | |
| | | | | CONFIRMING ORDER -- DO NOT DUPLICATE. | |
| | | | | ILLINOIS 1% MUNICIPAL OR COUNTY RETAILERS OCCUPATION TAX AND 1% RTA TAX IS FOR THE SELLERS ACCOUNT AND IS NOT TO BE INCLUDED ON BILLINGS. | |

TAX STATUS  CHARGE STATE SALES TAX
DISTRICT TAX CODE 129

IMPORTANT: All information, including complete Purchase Order Number shown in "SHIP TO" area must be shown on all freight bills, bills of lading, packing slips and invoices. Material ordered must be

INVOICES ONLY IN DUPLICATE TO:
LTV Steel Company
ACCOUNTS PAYABLE, ROOM 505
1600 WEST CARSON ST.
PITTSBURGH, PA 15263-0001

ADDRESS CORRESPONDENCE TO BUYER AT:
LTV Steel Company
P.O. BOX 5159
CLEVELAND, OHIO 44101

BY