**In re ANTHONY FERRANTE & SONS, INC., Debtor.**

**Civ. No. 88–2449(GEB).**

United States District Court,
D. New Jersey.

Sept. 26, 1990.

Scott E. Rekant, Deputy Atty. Gen., Atty. General's Office, Richard J. Hughes Justice Complex, Trenton, N.J., for State of N.J.

Lehman & Wasserman, Millburn, N.J., for debtor.

Stuart Brecher, Kleinberg, Moroney, Masterson & Schachter, Millburn, N.J., for trustee.

### OPINION

BROWN, District Judge.

I. INTRODUCTION

This is an appeal by the New Jersey Department of Environmental Protection ("DEP") from an order of the United States Bankruptcy Court permitting the trustee for Anthony Ferrante & Sons, Inc. ("Trustee"), to abandon a contaminated public water supply system. The bank-

ruptcy court also denied DEP's petition to compel the Trustee to correct all deficiencies in the system and operate it in compliance with state environmental regulations.

## II. BACKGROUND

The debtor, Anthony Ferrante & Sons, Inc. ("Ferrante"), was the owner and operator of a public water supply system (the "System") in Oxford Township, Warren County, New Jersey. The System supplies approximately 50 homes, a nursery school and a public library.

On June 26, 1980, the first "boil water" advisory was issued to the residents served by the System, informing them that bacteriological contamination made it necessary to boil the water before consumption. *See* Brief of DEP, app. at 50a. Four days later, DEP advised the Oxford Township mayor to "take over the Ferrante system in the interest of public health and safety...." *Id.* To date, Oxford Township has failed to comply with this directive.

For the next seven years, DEP issued a series of orders directing Ferrante to correct innumerable deficiencies in the System. Although Ferrante corrected some of these deficiencies, most remained unremedied. *Id.* at 51a–55a. From the facts of record, the last response by Ferrante prior to the filing of the bankruptcy petition occurred on May 20, 1986. *Id.* at 56a. According to the Trustee, Ferrante had abandoned the System in April of 1986, which presumably explains Ferrante's failure to respond to DEP's orders after May of that year. *See* Transcript of Hearing, U.S. Bankruptcy Court, March 21, 1988, at 18 (hereinafter "Tr.").

On April 13, 1987, Ferrante filed a petition under Chapter 7 of the Bankruptcy Code. On May 28, 1987, one day before the bankruptcy court entered an order for relief, DEP issued an Administrative Order and Notice of Civil Administrative Penalty Assessment against Ferrante. *See* Brief of DEP, app. at 50a–61a. In addition to ordering Ferrante to comply with all previous directives, DEP placed Ferrante on notice that "pursuant to the Small Water Company Takeover Act, N.J.S.A. 58:11–59 *et seq.*,

Ferrante's noncompliance with this Administrative Order and Notice of Civil Administrative Penalty Assessment may result in [DEP] ordering the transfer of ownership and control of Ferrante's public community water system." *Id.* at 59a. The record indicates that DEP was not aware of the pending bankruptcy proceedings until June 15, 1987. *Id.* at 13a. On September 24, 1987, DEP sent a telegram order to Ferrante and the Trustee, nine days *after* the Trustee's counsel advised DEP that Ferrante intended to abandon the System. *Id.* at 14a. The telegram order essentially reiterated DEP's previous directives, albeit in capsulized form. *Id.* Neither Ferrante nor the Trustee acted upon the telegram order, for on December 3, 1987, DEP instructed the Warren County Health Department to warn Ferrante customers that the "water should not be used for any purpose other than for flushing toilets." *Id.* at 10a.

On January 28, 1988, DEP filed a verified petition in the bankruptcy court to compel the Trustee to "operate the public water system in compliance with" New Jersey law. *Id.* at 2a–7a. On that same date, the Trustee's counsel filed an Information for Notice of Abandonment in the bankruptcy court, claiming that the Trustee "lacks expertise, resources and legal responsibility to properly operate the System...." *Id.* at 1a. The bankruptcy court heard oral argument on both petitions on March 21, 1988.

## III. THE DECISION OF THE BANKRUPTCY COURT

At the hearing on the parties' petitions, the bankruptcy court granted the Trustee's petition to abandon the System and denied DEP's petition. The court explicitly rested its decision on three grounds. First, the court distinguished this case from *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), where the Supreme Court held that a trustee "may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public

health or safety from identified hazards." *Id.* at 507, 106 S.Ct. at 762. Specifically, the bankruptcy court found that in *Midlantic*, funds attributable to the property were available to correct environmental hazards, whereas here, the System is "worthless" and thus no funds can properly be applied by the Trustee. *See* Tr. at 29–30.

The second decisional ground of the bankruptcy court also involved a distinction between *Midlantic* and this case. According to the bankruptcy court, this case involves a petition to compel the Trustee to "actually operate a going business," whereas in *Midlantic* the trustee was only required to expend funds of the estate to alleviate any hazardous conditions before liquidation. *Id.* at 30–31. The court reasoned that Chapter 7 of the Bankruptcy Code does not permit a trustee to operate a going business,[1] and to so permit the Trustee in this case would be a "clear interference with the adjudication of a bankruptcy." *Id.*

The third and final ground relied upon by the bankruptcy court was that DEP was guilty of laches by allowing the System to be contaminated since 1980. Referring specifically to the June 30, 1980 letter from DEP directing Oxford Township to assume control of the System the court stated:

> [DEP] has known about the problem for seven and a half years and [DEP] has been derelict in its duty. If [DEP] had come in and forced the issue a long time ago, the situation would not have occurred. And for [DEP] to now force the [T]rustee to do what [DEP] refused to do, i.e., enforce its own laws, seems to

[the court] to be an unfair imposition and interference with the adjudication of the bankruptcy.

*Id.* at 31.

The bankruptcy court concluded its oral opinion by finding that "in this case, the condition of compelling a trustee in liquidation under Chapter 7 of the Bankruptcy Code [to operate the System] *is so onerous that it interferes with the adjudication of the bankruptcy*." *Id.* at 31–32 (emphasis added).[2]

On May 5, 1988, the bankruptcy court entered an Order of Abandonment. *See* Brief of DEP, app. at 62a–63a. The language of the Order did not reflect the three grounds on which the bankruptcy court rested following the hearing on March 21, 1988. Rather, the Order stated that the Trustee is "unable to properly operate the [System], which was previously left abandoned" by Ferrante, and that the "Estate would not be benefitted by the retention" of the System by the Trustee. *Id.* at 63a.

Two weeks later, the bankruptcy court issued a letter to counsel supplementing the bench opinion of March 21, 1988. *Id.* at 66a–67a. In this letter, the court clarified several points. First, the court stated that the trustee could be compelled to "operate a going business" only under 11 U.S.C. § 721.[3] The court concluded that DEP had failed to comply with § 721 and therefore could not force the Trustee to operate the System:

> No application was ever made seeking authorization on the part of the [T]rustee to operate [the System], nor have any facts ever been submitted to the Court

---

**1.** Actually, Chapter 7 does permit a trustee to operate a going business, but only if the bankruptcy court so authorizes and only "for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate". *See* 11 U.S.C. § 721. The bankruptcy court in this case later clarified this point in a letter supplementing the opinion from the bench. *See* Brief of DEP, app. at 66a–67a.

**2.** The underscored language was admittedly drawn from *Midlantic,* but the Supreme Court

there expressly declined to address the "question whether certain state laws imposing conditions on abandonment may be so onerous as to interfere with the bankruptcy adjudication itself...." 474 U.S. at 507, 106 S.Ct. at 762.

**3.** 11 U.S.C. § 721 provides:

> The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate.

suggesting that operation would aid in the liquidation of the corporation. *Id.* at 66a.

Second, the bankruptcy court held that this case "was one which went beyond the provisions of *Midlantic* and specifically fell under those cases alluded to by Justice Powell in his footnote 9...." *Id.* at 67a.[4] Finally, the court distinguished *Midlantic* on the fact that *Midlantic* involved a Chapter 11 petition that was converted to Chapter 7 status only after the State sought compliance with environmental laws. *Id.* In other words, the bankruptcy court found that the applicability of *Midlantic* centered in part on whether the trustee was an operating trustee under Chapter 11, or a liquidating trustee under Chapter 7.

## IV. DISCUSSION

 Any appeal from a decision of the bankruptcy court must begin with the appropriate standard of review. With respect to findings of fact, Rule 8013 of the Bankruptcy Rules provides that "[f]indings of fact shall not be set aside unless *clearly erroneous.*" With respect to conclusions of law, however, this Court is bound to make an "independent determination on legal issues." *See, e.g., Prudential Ins. Co. v. Colony Square Co.,* 29 B.R. 432 (W.D. Pa.1983).

The core issue in this case is the proper balance between the efficient administration of an estate in bankruptcy and the legitimate interest of the State in protecting the public health and safety. The Supreme Court struck that balance in *Midlantic,* and the question before this Court is whether *Midlantic* prevents the Trustee from abandoning the System.

In *Midlantic,* the issue addressed by the Supreme Court was whether § 554(a) of the Bankruptcy Code "authorizes a trustee in bankruptcy to abandon property in contravention of state laws or regulations that are reasonably designed to protect the public's health or safety." *Midlantic,* 474 U.S. at 496, 106 S.Ct. at 757. Section 554(a)

provides, in pertinent part, that a trustee "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate." *See* 11 U.S.C. § 554(a). Thus, an inevitable tension arises when a trustee seeks to abandon property that may pose a threat to the health or safety of the public upon abandonment, or which posed such a threat at the time of abandonment. The Bankruptcy Code itself does not limit the abandonment power, but the Supreme Court announced a judicial limitation in *Midlantic.*

The factual context in *Midlantic* involved contaminated waste oil facilities which were in violation of both state and federal environmental laws. *Midlantic,* 474 U.S. at 496–99, 106 S.Ct. at 757–58. The debtor filed a Chapter 11 petition one day before the New Jersey Department of Environmental Protection ordered the debtor to clean up the facilities. *Id.* at 497, 106 S.Ct. at 757. Shortly thereafter, the Chapter 11 petition was converted to a liquidation proceeding under Chapter 7. *Id.* When the trustee failed to sell the facilities, he sought to abandon them under § 554(a). *Id.*

The Supreme Court in *Midlantic* concluded that the seemingly unlimited abandonment power under § 554(a) is indeed limited by state law:

[W]e conclude that congress did not intend for § 554(a) to pre-empt all state and local laws. The Bankruptcy Court does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety. Accordingly, without reaching the question whether certain state laws imposing conditions on abandonment may be so onerous as to interfere with the bankruptcy adjudication itself, we hold that a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards.

4. *See infra* note 5.

*Id.* at 507, 106 S.Ct. at 762.[5]

Several bankruptcy courts have taken a narrow view of the holding in *Midlantic,* specifically relying on the Supreme Court's own language in footnote nine of the opinion. *See In re Smith–Douglass, Inc.,* 75 B.R. 994, 998 (E.D.N.C.1987) (trustee only required to "take adequate precautionary measures to ensure that the public is not threatened"); *In re Franklin Signal Corp.,* 65 B.R. 268, 272 (Bankr.D.Minn. 1986) (same); *In re Oklahoma Refining Co.,* 63 B.R. 562, 565 (Bankr.W.D.Okla. 1986) (bankruptcy court need only "take state environmental laws and regulations into consideration").

■ This Court is reluctant to follow these other tribunals in limiting the otherwise clear language of the *Midlantic* Court. Rather, the unmistakable message in *Midlantic* is that a trustee may not abandon property in contravention of state law unless (1) the state law is not reasonably designed to protect the public health or safety from identified hazards; (2) the state law is so onerous as to interfere with the bankruptcy adjudication itself;[6] or (3) the violation caused by abandonment would merely be speculative or indeterminate, or would not create a risk of imminent and identifiable harm. *See In re Peerless Plating Co.,* 70 B.R. 943, 947 (Bankr.W.D.Mich. 1987).

No one contends that the applicable state environmental laws[7] are not reasonably designed to protect the public health or safe-

ty. However, before those laws can operate to restrict the otherwise unfettered abandonment power under § 554(a), "imminent and identifiable harm" to the public must be shown. *See Midlantic,* 474 U.S. at 507 n. 9, 106 S.Ct. at 762 n. 9. In *Midlantic,* there was little question that the waste oil facilities posed a very serious threat to the public, for the facilities contained approximately 470,000 gallons of oil contaminated with PCB, a "highly toxic carcinogen." *Id.* at 497, 106 S.Ct. at 757. Moreover, the abandonment of those facilities "aggravated already existing dangers by halting security measures that prevented public entry, vandalism, and fire." *Id.* at 499 n. 3, 106 S.Ct. at 758 n. 3. In short, the trustee's actions in *Midlantic* left the public not only exposed to the dangers of highly toxic chemicals, but also without any means, short of affirmative involvement by the State, to protect itself from those dangers.[8]

■ This case, on the other hand, is not at all like *Midlantic.* Although bacteriological contamination of the water supplied by Ferrante indisputably represents a health hazard to those who consume it, the fact remains that the residents of Oxford Township were repeatedly warned by health officials to refrain from consumption. In December of 1987, the residents were finally admonished not to use the water for any purpose other than flushing toilets. Ferrante customers, therefore, possessed the means to protect themselves

---

**5.** In a footnote, the Court further explained: "This exception to the abandonment power vested in the trustee by § 554 is a narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from *imminent and identifiable harm." Midlantic,* 474 U.S. at 507 n. 9, 106 S.Ct. at 762 n. 9. (emphasis added).

**6.** Actually, the Supreme Court declined to reach this question, but implied that some state laws may constitute an unwarranted interference with bankruptcy proceedings.

**7.** The state laws violated by the System include the Water Supply Management Act, N.J.S.A. 58:1A–1 et seq., the Water Supply and Wastewater Operators' Licensing Act, N.J.S.A. 58:11–64 et

seq., and the Safe Drinking Water Act, N.J.S.A. 58:12A–1 et seq.

**8.** The public was left without self-help alternatives in *Midlantic* for two reasons. First, because *Midlantic* involved toxic waste, the public was clearly ill-equipped to protect itself from the hazards of contamination, explosion, and fire. Second, the result of abandonment under § 554(a) is the revesting of a possessory interest in the debtor. *See, e.g., Ohio v. Kovacs,* 469 U.S. 274, 284–85 n. 12, 105 S.Ct. 705, 710–11, n. 12, 83 L.Ed.2d 649 (1985). Since the debtor was insolvent, the public certainly could not rely on it for the cleanup of the site. The public, therefore, could only look to the State for help in alleviating a continuing threat to health and safety.

against any health hazard, and that fact sharply distinguishes this case from *Midlantic.* To state it another way, the curtailment of service to Ferrante customers was undoubtedly inconvenient and economically harsh, but it does not constitute the type of threat of "imminent and identifiable harm" to the public health or safety contemplated in *Midlantic.*

Furthermore, abandonment of the System, unlike the situation in *Midlantic,* would not aggravate any danger to the public. Abandonment will not change the threat to the public from the contaminated water. Indeed, the bankruptcy court found that here, the "facts reveal that operations ceased long before the filing of the involuntary petition". *See* Brief of DEP, app. at 67a. In sum, the issue is "not one of public safety but one of money; who must bear the cost of cleanup," *In re Franklin Signal Corp.,* 65 B.R. 268, 274 n. 9 (Bankr.D. Minn.1986), or as here the cost of bringing the System into compliance and again providing service to the System's customers.

The Court is mindful of the statement in *Midlantic* that the bankruptcy court "does not have the power to authorize an abandonment without formulating conditions that will adequately protect the public's health and safety." *Midlantic,* 474 U.S. at 507, 106 S.Ct. at 762. Nevertheless, the "necessary corollary to this passage is that abandonment will be permitted when the conditions are such that abandonment will not render the public health and safety inadequately protected." *In re Purco,* 76 B.R. 523, 533 (Bankr.W.D.Pa.1987). *See also In re Smith–Douglass, Inc.,* 75 B.R. 994, 998 (E.D.N.C.1987) (a finding that there was no threat to. the public health and safety "obviated the necessity of protecting the public by placing conditions on the abandonment"). Since the residents served by the System have been repeatedly

warned of the contamination, and operation of the System has ceased, abandonment will not threaten the health of those residents.

Finally, the Court considers it particularly significant that DEP waited nearly eight years before seeking to enforce the administrative orders it issued against Ferrante during that period. Although this does not give rise to a defense of laches,[9] it does offer additional support for this Court's conclusion that the System did not pose an imminent threat of harm to the health of Ferrante customers. *See Purco,* 76 B.R. at 533 ("court infers from the [state's] lack of interest in this proceeding that there is no threat to the public health or safety"); *Franklin Signal,* 65 B.R. at 274 (no threat to public in part because state "has been informed of the situation from the outset, and has not found it necessary to take any further precautionary measures"). Indeed, DEP did not pursue its judicial remedies until after learning that the Trustee intended to abandon the System. It certainly seems that DEP was at least as concerned with protecting the public fisc as it was with protecting the public health. The Supreme Court, of course, was only interested in the latter when it limited the abandonment power in *Midlantic.* That the State may be forced to bear the expense of remedial measures, when that expense should have been borne by Ferrante before it filed for bankruptcy, is perhaps unfair but nonetheless not a basis for restriction of the powers given a trustee under the Bankruptcy Code.

The Court is certainly sympathetic to the plight of Oxford Township residents. It is a travesty that DEP, local health authorities, and Ferrante have all failed for nearly eight years to do little more than engage in bureaucratic dialogue. Unfortunately, this Court is powerless to prevent a trustee in bankruptcy from exercising the statutory

---

**9.** The Trustee argues, and the bankruptcy court held, that DEP was guilty of laches in delaying pursuit of a remedy against Ferrante for almost eight years. Because this Court affirms the bankruptcy court on other grounds, the laches issue is not significant, but the Court points out that the defense of laches is well known to be

inapplicable against a government entity in an action by that entity "to enforce a public right or protect a public interest." *See, e.g., United States v. Ruby Co.,* 588 F.2d 697, 705 n. 10 (9th Cir.1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979).

authority to abandon worthless property unless the case falls within the confines of *Midlantic.* Because the Court concludes that this case does not so fall, the decision of the bankruptcy court will be affirmed. Whether DEP, should it undertake to correct the deficiencies in the System, is entitled to reimbursement from the Ferrante estate is not before the Court. Finally, in light of the Court's conclusions expressed herein, it is unnecessary to address the other issues raised on appeal.