**STATE OF NEW JERSEY DEPART-
MENT OF ENVIRONMENTAL
PROTECTION, Appellant,**

v.

**NORTH AMERICAN PRODUCTS
ACQUISITION CORP., et al.,
Appellees.**

**Civ. No. 91–4602 (CSF).**

United States District Court,
D. New Jersey.

Jan. 21, 1992.

---

* An order was previously entered following oral    delivery of this decision on January 17, 1992.

Robert J. Del Tufo, Atty. Gen. of New Jersey, by Phyllis E. Bross, Deputy Atty. Gen., Dept. of Environmental Protection and Energy, Trenton, N.J., for appellant.

Charles M. Forman, Newark, N.J., for appellee.

CLARKSON S. FISHER, District Judge.

Before the court is an appeal by the State of New Jersey, Department of Environmental Protection and Energy, from an order of the bankruptcy court dated September 19, 1991, which permitted the Trustee in Bankruptcy to abandon a parcel of environmentally hazardous real property formerly owned by debtor, North American Products Acquisition Corp. ("NAPA"). There are two issues presented on appeal. First, the appellant argues that the bankruptcy court abused its discretion in permitting the Trustee to abandon the property without first conducting a formal hearing concerning the health and safety dangers presented by the contaminated property. Second, the appellant argues that the bankruptcy court was clearly erroneous in finding that: the debtor's property was burdensome or of inconsequential value to the Estate; the Trustee could have rejected the inclusion of the subject property in the Estate at the initiation of the case, thereby preventing any "burden" on the Estate; and that the State did receive notice of the sale of inventory and equipment from the site. For the following reasons, the judgment of the bankruptcy court is vacated in

part and affirmed in part, and the case will be remanded.

In 1979, NAPA, the debtor, began operating a manufacturing facility on a 24–acre site in Raritan Borough, Somerset County, New Jersey. The debtor acquired title to the property in 1982. On July 11, 1986, manufacturing operations at the site ceased. NAPA filed a voluntary petition under chapter 11 of the Bankruptcy Code on July 14, 1986. 11 U.S.C. § 1101 et seq. A motion was brought by New Jersey National Bank (now known as CoreStates, N.A.), which had a valid, secured, first lien on NAPA's equipment, inventory and accounts receivable, to convert the case to chapter 7. 11 U.S.C. § 701 et seq. A trustee was appointed on July 22, 1986, and on July 24, 1986, the case was converted to chapter 7.

A court order was entered on August 27, 1986, permitting the Trustee to collect and liquidate NAPA's equipment, inventory and accounts receivable and ordering the Trustee to turn the proceeds over to New Jersey National Bank. The only remaining asset after the Trustee's sale was the debtor's real property, which the State has found to be contaminated with high concentrations of trichloroethene, acetone, toluene and other hazardous materials.

On July 18, 1986, notice of the debtor's filing was submitted to the State pursuant to the State's Environmental Cleanup Responsibility Act ("ECRA"). *See* N.J.S.A. 13:1K–6. Additionally, notice of a creditors' meeting, to be held on October 8, 1986, was sent to the State. Further, notice of the sale of debtor's assets on November 12, 1986, was sent to the State. The State, however, was not actively involved in the chapter 7 proceeding, and by the time the State did become actively involved, all of the assets of the Estate had been distributed.

The Trustee has attempted to sell the property, but, due to the contaminated condition of the property, no purchaser has been found. The property is valued at approximately $2.5 million with no contamination present. It is estimated that it would cost between $90,000 and $120,000 to determine how much cleanup would cost. The State has undertaken no such cleanup efforts. Currently, the property is encumbered by liens totaling about $2 million, exclusive of interest.

On August 26, 1991, the bankruptcy court, after a hearing on a motion to dismiss, permitted the Trustee to abandon the property, but imposed certain conditions on the abandonment. The conditions were: that the case not be dismissed, that the Trustee turn over to the Estate all funds remaining in the estate after payment of administration costs and that the State's claim against the secured creditors under 11 U.S.C. § 506(c) would be preserved. It should be noted that the administrative costs were approximately $100,000, while the money in the Estate to pay such claims totaled $40,000.

On appeal, the State argues that the bankruptcy court failed to conduct a hearing to ascertain the threat of imminent harm to the public's health or safety that abandonment of the property would engender. The court, however, assumed that such harm existed, but due to the lack of funds available to the Estate permitted abandonment of the property anyway.

This appeal requires the court to examine the decision of the United States Supreme Court in *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), to determine whether the bankruptcy court is mandated to conduct such a hearing.

There are two different standards of review that the district court must employ when reviewing a determination by the bankruptcy court, one for findings of fact and another for conclusions of law. "Findings of fact shall not be set aside unless clearly erroneous." Fed.R.Civ.P. 52(a); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222–23 (3d Cir.1989); *In re Morrissey*, 717 F.2d 100, 104 (3d Cir.1983). Findings of fact are clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. Gypsum Co.*, 333 U.S. 364, 365, 68 S.Ct. 525, 527, 92 L.Ed.

746 (1948). *Id.* The court, however, undertakes a de novo review of the bankruptcy court's legal conclusions. *Id.* A court " 'must exercise plenary review of the trial court's choice and interpretation of legal precepts and its application to the historical facts.' " *In re Sharon Steel*, 871 F.2d at 1223 (quoting *Universal Minerals, Inc. v. C.A. Hughes Co.*, 669 F.2d 98, 103 (3d Cir.1981)).

■ The first issue presented on appeal, as framed by the appellant, is whether the bankruptcy court abused its discretion by permitting the Trustee to abandon the property without first taking testimony to assess adequately the health and safety concerns implicated by the abandonment of the contaminated property. The State argues that under *Midlantic* prior to abandonment of contaminated property the bankruptcy court must formulate conditions that would adequately protect the public health and safety. 474 U.S. at 505, 106 S.Ct. at 762. Necessarily, the State contends, in order to formulate adequate conditions the bankruptcy court must be fully aware of the dangers posed by the property. Accordingly, the State argues, the bankruptcy court can secure this information only by conducting a hearing concerning the dangers presented by the property. In this case, the State alleges that the bankruptcy court, which assumed that such harm exists, failed to craft adequate conditions prior to abandonment because the court erroneously viewed economic considerations first and discovered that, because there was no money in the Estate to pay for such cleanup, the Trustee was permitted to abandon the property.

To the contrary, the Trustee contends that Midlantic does not require a hearing and that the decision should be construed narrowly to apply only to those situations where abandonment would aggravate an existing harm and is, therefore, not applicable in this case.

The question presented regarding the applicability of the *Midlantic* decision is a question of law; therefore, the court will exercise plenary review of the bankruptcy court's determinations. *Sharon Steel*, 871

F.2d at 1223. This review will begin with section 554 of the Bankruptcy Code, which permits the Trustee to abandon property of an estate. 11 U.S.C. § 554(a). The section provides:

(a) After notice and a hearing the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate.

11 U.S.C. § 554(a).

"This language, absolute in its terms, suggests that a trustee's power to abandon is limited only by considerations of the property's value to the estate." *Midlantic*, 474 U.S. at 509, 106 S.Ct. at 763 (Renquist, J., dissenting). In *Midlantic*, however, a majority of the Court imposed other restrictions.

The facts of *Midlantic* were stated succinctly in *In re Smith–Douglass, Inc.*, 75 B.R. 994, 996–97 (E.D.N.C.1987), as follows:

In *Midlantic*, the trustee sought to abandon a large quantity of highly toxic and carcinogenic waste oil stored in unguarded, deteriorating containers which presented risks of explosion, fire, contamination, injury and death.... The trustee's abandonment had the result of aggravating these dangers because upon the abandonment the 24 hour guard service was terminated and the fire suppression system shut down.

*Id.* at 996–97.

The issue before the Court was whether section 554(a) of the Bankruptcy Code permits a trustee "to abandon property in contravention of state laws or regulations that are reasonably designed to protect the public's health or safety." *Id.* at 496, 106 S.Ct. at 757.

Therefore, the Court prohibited abandonment. It is interesting to note, however, that subsequent to the Supreme Court's disposition of *Midlantic*, the trustee was permitted to abandon the properties because there were no remaining funds available to clean up the site. *See In re Heldor Indus., Inc.*, 131 B.R. 578, 587 n. 9 (Bankr. D.N.J.1991).

In examining the case before the court it is imperative to analyze a footnote in *Midlantic* which significantly circumscribed the Court's ruling. The Court held that a bankruptcy court cannot permit abandonment without formulating conditions that will adequately protect the public's health or safety from unidentified hazards. *Id.* at 507, 106 S.Ct. at 762. The footnote reads:

> *This exception to the abandonment power vested in the trustee by § 554 is a narrow one.* It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.

*Id.* at 507 n. 9, 106 S.Ct. at 762 (emphasis added). Thus, the Court's holding has been construed as self limiting.

Recently, in *Heldor*, the bankruptcy court defined the limited applicability of the *Midlantic* restriction on the trustee's abandonment power. The court explained that *"Midlantic* created only a narrow exception to the abandonment power involving cases in which abandonment would *aggravate* imminent and identifiable dangers to the public health or safety." *Heldor*, 131 B.R. at 587 (emphasis added) (*"Midlantic* created a narrow exception to the abandonment power for those rare cases in which unconditional abandonment would *aggravate* serious existing dangers.") (emphasis added).

The *Heldor* decision echoes the interpretation of *Midlantic* previously set forth in *In re Anthony Ferrante & Sons, Inc.,* 119 B.R. 45 (D.N.J.1990), which stated that a trustee may not abandon property in contravention of state law unless "the violation caused by the abandonment would merely be speculative or indeterminate or would not *create* a risk of imminent and identifiable harm." *Id.* at 48 (emphasis added). In *Ferrante* Judge Brown ruled that abandonment of the contaminated property would neither aggravate any danger to the public nor change the threat to the public. *Id.* at 50. Therefore, the court

affirmed the decision of the bankruptcy court permitting abandonment. *Id.*

Additionally, cases outside of this district read *Midlantic* narrowly. *See Smith Douglass,* 75 B.R. at 997 ("The narrow exception created by the Court was only to require the trustee to take adequate precautionary measures to ensure that the public is not threatened by an imminent danger *as the result of the abandonment.*") (emphasis added); *In re Oklahoma Refining Co.,* 63 B.R. 562, 565 (Bankr.W.D.Okla.1986) ("Abandonment will not aggravate the existing situation....").

Therefore, it is apparent from a reading of the cases that have interpreted *Midlantic* that if the bankruptcy court finds that abandonment will not aggravate the threat of harm to the health and safety of the public or create some additional harm abandonment should be permitted.

■ The transcript of the bankruptcy court proceedings reveals that there was extensive discussion between the court and counsel for the State over who was to pay for the cleanup of the site. This extensive colloquy reveals that Judge Gindin was assessing the practical realities of a bankruptcy estate without money. The transcript also reveals that the State was concerned primarily with the public fisc, and not the public welfare. Of course the State will argue that because they could not present witnesses they could not demonstrate that abandonment would, in fact, aggravate the harm or create some peril to the public safety and welfare. This argument, however, will stumble on the facts. There is no indication on the record that abandonment will aggravate the situation. Unlike in *Midlantic*, there is currently no security service at the premises, nor is there an alarm system. Further, there are no unencumbered assets available to the Trustee to pay for site security or to remove the sludge and drums. Therefore, it is apparent that abandonment will not aggravate the situation.

Nonetheless, because the bankruptcy court did not make such a specific finding as to whether abandonment would create a peril or aggravate the danger to the public,

the court is constrained to remand the matter to the bankruptcy court to take testimony to determine whether abandonment will aggravate a harm to the public.

■ Additionally, the State makes three objections to the bankruptcy court's findings of fact. The court cannot set aside such findings unless they are clearly erroneous. *Sharon Steel*, 871 F.2d at 1222–23. First, the State argues that the court erred in finding that the property was burdensome or of inconsequential value to the Estate. As of September 1990, the property was encumbered by almost $2 million in mortgages and municipal liens, not counting the interest that is presently accruing on those claims. As previously noted, the value of the property in an uncontaminated condition is estimated at $2.5 million. After deducting the costs of cleanup, repairs and sale, there would have been no equity in the property. Therefore, it was the bankruptcy court's finding that the property was burdensome or of inconsequential value to the Estate. Such finding is not clearly erroneous.

■ Further, the State contends that the bankruptcy court's finding that it received no notice of this case early on in the proceedings is clearly erroneous. The State supports it contention by suggesting that it has no record of having received notice. Despite the State's contention that the bankruptcy court did not examine the issue in depth, the bankruptcy court pointed to the notice list of creditors in this case and explained that through experience the bankruptcy court knows that the State always gets notified. Transcript at pp. 25–28. Therefore, this court is not left with the distinct impression that a mistake has been made and, therefore, will not disturb the bankruptcy court's finding.

■ Finally, the State argues that the court should have found that the "trustee could have rejected the inclusion of certain property in the estate at the initiation of the case, thereby preventing any burdensomeness of the contaminated real property." After a review of the record it appears that the State, although presented with ample opportunity to raise all argu-

ments below, failed to present this argument. Therefore, it is an issue not properly before this court.

In conclusion, the bankruptcy judge's findings of fact are affirmed, and the case is remanded for a determination of whether abandonment of the site will aggravate the harm to the public.