In re ST. LAWRENCE CORPORATION, Debtor.

Bankruptcy No. 95–38109.

United States Bankruptcy Court, D. New Jersey.

Oct. 7, 1999.

Sam Della Fera, Gibbons, DelDeo, Dolan, Griffinger & Vecchione, Newark, NJ, for Chapter 7 trustee.

Gary F. Eisenberg, Windels, Marx, Davies & Ives, New Brunswick, NJ, for Starbare III Partners, LP.

Rachel J. Lehr, Deputy Attorney General's Office, Trenton, NJ, for the State of New Jersey, Department of Environmental Protection.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This matter is before the court on a motion by the trustee to abandon real property. The New Jersey Department of Environmental Protection (hereinafter "DEP") opposes the motion, claiming violation of state environmental law. The

court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The following shall constitute the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On November 13, 1995 St. Lawrence Corp., the debtor, filed a voluntary petition for relief under chapter 11 of title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code"). The debtor's primary asset is real property (hereinafter "the property") consisting of two commercial buildings and adjacent land. Prior to bankruptcy, the debtor operated its business of managing the property, which was leased to six commercial and one residential tenants, and continued to do so as debtor in possession until a trustee was appointed.

The court directed the appointment of a chapter 11 trustee in January 1996 and Stephen Tsai was appointed. His appointment was terminated in June 1997 and Ellen B. Kulka was appointed as substitute trustee. Mr. Tsai and Ms. Kulka shall be referred to henceforth as "the chapter 11 trustee." Starbare III Partners, L.P. ("Starbare") holds liens on the real property, rent and fire insurance proceeds, securing a claim of approximately $1.2 million. There is no equity in the assets subject to Starbare's lien. The chapter 11 trustee administered the property and attempted to sell it. In April 1998, a fire damaged the main building on the property, displacing three tenants and causing the loss of the rent from their leases. While partial insurance payments have been made, only minimal repairs have been done. Notwithstanding the fire damage, competing offers were made by William M. Richardson and Harry A. Richardson, principals of the debtor, to purchase the property for amounts less than the amount due to Starbare. Both offers were, however, eventually withdrawn.

Having determined that sale of the property was not possible and that the property had no other value to the estate, the chapter 11 trustee filed a motion on November 25, 1998 to abandon the property, or in the alternative to convert the case to chapter 7. The DEP opposed abandonment, arguing that the trustee is required to comply with state environmental law before abandoning the property. At a hearing on December 17, 1998 the court converted the case to chapter 7 and adjourned the motion as to abandonment. Bunce D. Atkinson was appointed chapter 7 trustee (hereinafter "the chapter 7 trustee"). On May 17, 1999 the court heard oral argument on the motion for abandonment and reserved decision.

Meanwhile on March 19, 1999 Starbare moved for relief from the automatic stay as to the property and for turnover of all cash of the estate as its cash collateral. The chapter 7 trustee did not oppose the motion as to the property, but opposed it as to the cash collateral. However, on June 17, 1999 an agreed order was entered granting Starbare relief from the automatic stay as to the real property, fire insurance proceeds and rents, net of specified compensation amounts to the chapter 7 and 11 trustees and their professionals for administering the property. It appears from the certification of the chapter 7 trustee filed on March 30, 1999 in opposition to Starbare's motion that he did administer the property to the extent possible in view of the limitations imposed by Starbare on the expenditure of its cash collateral, while determining if sale was possible, and he continued to employ a property manager who had been employed by the chapter 11 trustee. The chapter 7 trustee did not, however, obtain authorization from the court under Code section 721 to operate the debtor's business.

The chapter 11 trustee and the Richardsons assumed during the negotiations for the sale of the property that the provisions of the New Jersey Industrial Site Recovery Act ("ISRA"), N.J.Stat.Ann. 13:1K–6

to –14 (West 1991 & Supp.1999) would have to be complied with in connection with a sale. Harry Richardson therefore obtained a Phase I Environmental Site Assessment which, according to the verified motion for abandonment, "disclosed no serious or material environmental remediation issues and certainly no imminent or other danger to public health or safety." Trustee's Verified Motion filed 11/25/98 ¶ 22. William Richardson never provided a site assessment, but his counsel alleged in a letter dated November 20, 1998 that his environmental consultant said there was possible contamination and used that as a justification for modifying his purchase offer. *Id.* at Exhibit A. The DEP's Objection to this motion states that an unidentified tenant has submitted a preliminary site assessment and obtained a "no further action" letter, but the DEP knows nothing about the rest of the property. The DEP states further that a Phase I Environmental Audit (presumably, Harry Richardson's audit) is not acceptable. DEP Objection filed 12/10/98 at 2. The record on the motion contains no other evidence as to whether there is any environmental contamination of the property. The hearsay in the November 20, 1998 letter from William Richardson's counsel does not rise to the level of proof of contamination. It follows that there is also no proof that any contamination constitutes an imminent and identifiable harm to the public, or that abandonment will aggravate any threat of such harm.

### The Trustee's Position

The trustee's position is that abandonment is proper because the real property is burdensome and is of inconsequential value and benefit to the estate. The property has no equity, and the carrying costs exceed the rental income.

While the trustee acknowledges that under certain circumstances property cannot be abandoned without complying with state law, he argues that such an exception does not apply here. His position is that only if abandonment causes "imminent and identifiable harm" to the public should it be denied. It is argued that since there is no such showing, abandonment is proper pursuant to 11 U.S.C. § 554(a).

### The DEP's Position

The DEP opposes abandonment based on the debtor's failure to comply with state environmental law. The DEP's position is that the trustee must fully comply with all environmental laws before property can be abandoned. The DEP further contends that the trustee has failed to comply with state law filing requirements to notify the DEP of the condition of the site. It is asserted that the trustee's delinquency has precluded the state from fully assessing the property's condition. The DEP claims that because the trustee has not complied with state environmental law, abandonment is improper.

### CONCLUSIONS OF LAW

#### I.

■ Bankruptcy Code section 554(a) authorizes a trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate. Abandonment is "the release from the debtor's estate of property previously included in that estate." *Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 508, 106 S.Ct. 755, 763, 88 L.Ed.2d 859 (Rehnquist, J., dissenting) (citing 2 William L. Norton, Jr., Norton Bankruptcy Law and Practice § 39.01 (1984) and *Brown v. O'Keefe,* 300 U.S. 598, 602–03, 57 S.Ct. 543, 546–47, 81 L.Ed. 827 (1937)).

The Supreme Court recognized an exception to the trustee's abandonment power in *Midlantic.* The controversy in that case arose from the objection by environmental authorities to the trustee's abandonment of property containing contaminated waste oil stored in leaking containers. The waste oil created a risk of explosion, fire, injury, and further contamination. Abandonment would have ag-

gravated the risk, since guard service and other safety measures would be terminated. The Court held that the abandonment power did not preempt state laws that are "reasonably designed to protect the public health or safety from identified hazards." *Midlantic*, 474 U.S. at 507, 106 S.Ct. at 762. The Court went on to state:

> This exception to the abandonment power vested in the trustee by § 554 is a narrow one. It does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment. The abandonment power is not to be fettered by laws or regulations not reasonably calculated to protect the public health or safety from imminent and identifiable harm.

*Id.* at 507 n. 9, 106 S.Ct. at 755 n. 9. The Court denied abandonment, finding the public health and safety unprotected.

■ Following *Midlantic*, abandonment of contaminated real property is permitted unless there is a showing of "imminent and identifiable harm." *See, e.g., New Mexico Environment Department v. Foulston (In re L.F. Jennings Oil Co.)*, 4 F.3d 887, 890 (10th Cir.1993); *Borden v. Wells–Fargo Business Credit (In re Smith–Douglass, Inc.)*, 856 F.2d 12, 16 (4th Cir.1988); *see also* 6A William L. Norton, Jr., Norton Bankruptcy Law and Practice 2d § 149:17, at 50 (1997) ("The ambiguity of [the] footnote ... appears to limit the abandonment right to only those cases where no 'imminent and identifiable harm' exists....").

The DEP argues that there is precedent from the U.S. Court of Appeals for the Third Circuit which precludes abandonment here. However, none of the Third Circuit cases cited by the DEP dealt with abandonment. *U.S. v. Nicolet, Inc.*, 857 F.2d 202 (3d Cir.1988), held that an action by the United States to recover a judgment for costs expended in the clean-up of a hazardous waste site under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9604, is excepted from the automatic stay under Code section 362(b)(4) as an action by a governmental unit to enforce its police or regulatory power. *Torwico Electronics, Inc. v. New Jersey Department of Environmental Protection (In re Torwico Electronics)*, 8 F.3d 146 (3d Cir.1993), held that a debtor's obligation to clean up a hazardous waste site was not a "claim" which can be discharged in bankruptcy. *Pennsylvania Department of Environmental Resources v. Conroy*, 24 F.3d 568 (3d Cir.1994), held that costs incurred by a state in cleaning up a site during a bankruptcy case were entitled to priority in payment as an administrative expense claim. Further, these cases concerned, respectively, a "hazard from two waste piles," *Nicolet*, 857 F.2d at 203, a "hidden illegal seepage pit containing hazardous wastes" which were migrating into local waters, *Torwico*, 8 F.3d at 147, and "drums and canisters of hazardous waste". *Conroy*, 24 F.3d at 569. In all of those cases, there was a proven hazard from environmental contamination. In this case, by contrast, there is no proven environmental contamination at all, let alone proof of contamination constituting "imminent and identifiable harm" within the meaning of *Midlantic* so as to raise an exception to the abandonment power.

There are, however, two cases from the United States District Court for the District of New Jersey which are on point. In *In re Anthony Ferrante & Sons, Inc.*, 119 B.R. 45 (D.N.J.1990), the chapter 7 trustee moved to abandon a contaminated public water supply system. The DEP objected. The court held that under *Midlantic* abandonment cannot be prevented unless an imminent and identifiable harm to the public is shown. *Id.* at 49. Since the affected residents had been warned not to use the contaminated water, those residents possessed the means to protect themselves against any health hazard, which distinguished the case from *Midlantic*. *Id.* at 49–50. In addition, abandonment would not aggravate any danger in *Ferrante* as it would have in *Midlantic*. *Id.* at 50. The court in *Ferrante* held that "abandonment

will be permitted when the conditions are such that abandonment will not render the public health and safety inadequately protected." *Id.* at 50 (citing *In re Purco,* 76 B.R. 523, 533 (Bankr.W.D.Pa.1987)). Consequently, the court overruled the DEP's objection and grated the motion for abandonment.

The case of *New Jersey Department of Environmental Protection v. North American Products Acquisition Corp.,* 137 B.R. 8 (D.N.J.1992), also involved a motion by a chapter 7 trustee to abandon environmentally contaminated real property to which the DEP objected. The DEP argued that before abandonment could be permitted, the bankruptcy court was required to conduct a hearing concerning the dangers presented by the property. The court held that "if the bankruptcy court finds that abandonment will not aggravate the threat of harm to the health and safety of the public or create some additional harm abandonment should be permitted." *Id.* at 12. Because, however, the bankruptcy court did not make a specific finding as to whether abandonment would create a peril or aggravate a danger to the public, the district court remanded for such a finding. *Id.* at 12–13.

## II.

The DEP notes that the Industrial Site Recovery Act ("ISRA"), N.J.Stat.Ann. 13:1K–6 to –14 (West 1991 & Supp.1999), formerly known as the Environmental Cleanup Responsibility Act ("ECRA"), states that the initiation of proceedings under chapter 7 of the Bankruptcy Code is defined as "closing operations," which triggers the requirements of ISRA. N.J.Stat. Ann. 13:1K–8. ISRA requires that upon closing of operations of an industrial establishment, its owner or operator must either convince the DEP that the site has no contamination or remediate any contamination which exists. The DEP argues that ISRA therefore prohibits a chapter 7 trustee of a bankruptcy estate containing an industrial establishment from abandoning real property without complying with these requirements.

■ If ISRA applies to bankruptcy trustees, it does so by virtue of 28 U.S.C. § 959(b). The DEP therefore also argues that 28 U.S.C. § 959(b) requires the trustee to comply with ISRA. 28 U.S.C. § 959(b) states that

> ... a trustee ... appointed in any cause pending in any court of the United States ... shall manage and operate the property in his possession as such trustee ... according to the requirements of the valid laws of the State in which such property is situated in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

The majority in *Midlantic* had the opportunity to rule on the issue of the applicability of 28 U.S.C. § 959(b) to a liquidating trustee, but declined to do so on the ground that § 959(b) was not directly applicable to an abandonment:

> Even though § 959(b) does not directly apply to an abandonment under § 554(a) of the Bankruptcy Code—and therefore does not delimit the precise conditions on an abandonment—the section nevertheless supports our conclusion that Congress did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of a trustee's powers.

*Midlantic,* 474 U.S. at 505, 106 S.Ct. at 761. Chief Justice (then, Justice) Rehnquist, however, writing for the four dissenters in *Midlantic,* argued that

> Assuming that temporary management or operation of a facility during liquidation is governed by § 959(b), I believe that a trustee's filing of a petition to abandon, as opposed to continued operation of a site pending a decision to abandon, does not constitute "manage[ment]" or "opera[tion]" under that provision.

*Id.,* 474 U.S. at 514, 106 S.Ct. at 766. In *In re Corona Plastics, Inc.,* 99 B.R. 231 (Bankr.D.N.J.1989), the court held that

"[w]here, as here, the trustee is not conducting business, but instead is disposing of the assets of the estate, § 959(b) is not applicable." *Id.* at 236.[1] *Corona Plastics* relied in part on *Matter of Borne Chemical Co., Inc.,* 54 B.R. 126 (Bankr.D.N.J.1984), which held that "28 U.S.C. § 959(b) is applicable only where the property is being managed or operated for the purpose of continuing operations...." *Id.* at 135.

The court believes that *Corona Plastics* and *Borne Chemical* interpreted *Midlantic* correctly as it relates to 28 U.S.C. 959(b). The majority opinion in *Midlantic* expressly states that 28 U.S.C. § 959(b) does not apply to an abandonment. The court therefore holds that when a trustee decides to abandon property under Code section 554 as being burdensome to the estate or of inconsequential value and benefit to the estate, 28 U.S.C. § 959(b) and state laws regarding management and operation of such property, including ISRA, do not preclude abandonment except as stated in *Midlantic.* As previously noted, under *Midlantic* abandonment shall be permitted unless it would aggravate a threat of harm to the health and safety of the public or create some additional harm. *North American Prod.,* 137 B.R. at 12.

### III.

The proper placement of the burden of proof is important in this case. In the overwhelming majority of reported cases on abandonment of real property after *Midlantic,* the existence of environmental contamination was established, and if there was any issue of material fact at all, it was as to the extent of the hazard posed by the contamination and whether abandonment would aggravate that risk. In this case, by contrast, there is no proof that any contamination even exists on the property. Under ISRA, the owner or operator of an industrial establishment has the burden of proving to the DEP that the property is not contaminated, or that any contamination has been remediated. The DEP essentially urges that the court require the trustee to meet that burden as a condition to abandonment.

The issue under *Midlantic* is stated differently, however. *Midlantic* states that the narrow exception recognized by that case to the abandonment power "does not encompass a speculative or indeterminate future violation of [environmental] laws that may stem from abandonment." *Midlantic,* 474 U.S. at 507 n. 9, 106 S.Ct. at 762 n. 9. For the abandonment power to be fettered by such laws, there must be an "imminent and identifiable harm" as there was in that case. *Id.* The issue then becomes whether the trustee has the burden of proving that no imminent and identifiable harm will result from abandonment, or whether the DEP has the burden of proving that such harm will result.

The general rule is that the burden of proof rests on the party who has the affirmative of an issue. The test for determining which party has the affirmative, and therefore the burden of establishing an issue, is which party would be successful if no evidence at all is given. The burden is on the one who, absent meeting his burden, is not entitled to relief or runs the risk of non-persuasion. 31A C.J.S. *Evidence* § 121 (1996); 29 Am.Jur.2d *Evidence* § 158 (1994). As a corollary, the burden is on a defendant or other proponent to prove a matter in avoidance, a special or affirmative defense, or other new matter as a ground for denying relief. 31A C.J.S. *Evidence* § 122; 29 Am.Jur.2d *Evidence* § 160.

■ Applying those principles here, the trustee has the burden under Code section 554(a) of proving that property to be abandoned is either burdensome to the estate or is of inconsequential value and benefit to the estate. If the trustee meets that burden, the burden then shifts to the party opposing abandonment under *Midlantic* to prove that contamination on the property creates an imminent and identifi-

---

1. This court does not dispute that a trustee or debtor in possession has to comply with ISRA by virtue of 28 U.S.C. § 959(b) if the property is sold. The "disposition" of the property in *Corona Plastics* was a turnover of the property to a secured creditor.

able harm to the public which will be aggravated by the abandonment.

The reported cases reviewed by the court on the extent of the threat posed by abandonment have not articulated the issue in terms of burdens of proof as such, but have nevertheless applied those principles. In *Smith–Douglass*, 856 F.2d at 16, the court held that the absence of any enforcement action by the state environmental protection agency indicates no threat of immediate harm. In *L.F. Jennings Oil*, 4 F.3d at 890–91, the court found that the absence of the subject property from the state's list of contaminated sites and the existence of insufficient data by the state's own expert to opine that there was a present threat led to the conclusion that the property did not pose an immediate threat to public health or safety. Significantly for purposes of this case, the Tenth Circuit added in *L.F. Jennings Oil* that the trustee's failure to file reports in violation of state law did not prevent abandonment. *Id.* And in *Ferrante*, 119 B.R. at 50, the court found that the absence of DEP enforcement action after it knew of environmental contamination for eight years indicated no immediate threat to the public health or safety.

▉▉▉ The DEP has offered no evidence to contradict the trustee's evidence that the property is burdensome to the estate or of inconsequential value and benefit. The property is operating at a loss and Starbare's lien on the rents means the estate realizes no profit from the property. Exhaustive efforts to sell the property produced no purchase offers even equal to the amount due on Starbare's mortgage. The trustee has therefore met his burden of proving a prima facie case for abandonment. The DEP then has the burden of proving that abandonment would aggravate a risk of imminent and identifiable harm from contamination on the property. Since it has not been proven that contamination exists, it follows that the DEP has not met its burden of proving that any risk of harm would be aggravated by abandonment.

## IV.

While it is not crucial to the outcome in this case for the reasons stated above, the court will take judicial notice that environmental testing and preparation of reports for the DEP is expensive. For example, in this case the environmental consultant for William Richardson apparently estimated the cost of·testing at $20,000. Trustee's Verified Motion at Exhibit A. Remediation is typically more expensive than testing, and often far more expensive. Although the DEP has not acknowledged in its appearances in various cases in this court that the availability of funds or competing claims to such funds has any relevance to an obligation to pay for compliance with environmental law from funds of a bankruptcy estate, the court is obligated in a bankruptcy case to determine the proper allocation of funds when there is virtually never enough to pay all claims, often there are insufficient funds to even pay all administrative expenses, and sometimes there are no funds at all. The DEP's position in this court has always been that whatever funds exist in the estate must be used to determine whether there is environmental contamination, and if so, to clean it up. The fact that there are other administrative expenses in a case, and secured claims which prime administrative expenses, is a reality the DEP refuses to acknowledge.

There is, however, an interesting epilogue to *Midlantic*. That case was venued in New Jersey, and this member of the court had occasion to examine the file in connection with another case. It is ironic that after remand from the Supreme Court, the bankruptcy court authorized abandonment of the *Midlantic* properties by order of January 28, 1987, with the consent of the Attorneys General of New Jersey and New York, because there were no remaining funds available to undertake any remedial action.

## V.

▉▉▉ When property is abandoned, it reverts to any party with a possessory

interest in it. 5 Collier on Bankruptcy ¶ 554.02[3] (Lawrence P. King ed., 15th ed. rev.1996). Normally, the debtor is the party with a possessory interest, but in some cases another party such as a secured creditor may be entitled to possession. *Id.* Starbare has stated that it may elect to foreclose its mortgage, clean up the property if necessary, and sell it to recover on its mortgage. Transcript of 5/17/99 at 10. If not, possession will remain in the debtor with any attendant obligations which ISRA may impose. Abandonment in this case reflects the court's decision that the property is burdensome to the estate, *and* of inconsequential value and benefit to the estate. The self-described narrow exception created by *Midlantic* cannot on the facts of this case add to that burden.

## CONCLUSION

For the foregoing reasons, the DEP's objection to abandonment is overruled and the trustee's motion to abandon the subject property is granted. The trustee shall submit an order within ten days on notice under D.N.J. LBR 9072–1(c).